UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____x

Arnaldo Magnoni and Rachel Magnoni                  Case No.:17-4043
in their individual capacities and as the
parents and legal guardians of A.M.,
a disabled infant, and A.M., infant,
                                    Plaintiffs,

                                                    **VERIFIED**
                                                    **COMPLAINT**

            v.


Plainedge U.F.S.D; Edward A. Salina, Jr. individually
& as Superintendent of Schools; Plainedge U.F.S.D.
Board Of Ed.; Jennifer Thearle, individually &
as Principal; Anthony Deriso, individually & as
Principal,
                        Defendants.

_____


        Plaintiffs, Arnaldo Magnoni, a retired New York City Police Officer who was injured in

the line of duty and his wife, Rachel Magnoni,  and in their individual capacities and as the

parents and legal guardians of A.M., a disabled infant, and A.M., disabled infant, by and through

their counsel, and based upon information and belief hereby state as follows, for their Verified

Complaint against the Defendants, Plainedge Union Free School District; Edward A. Salina, Jr.,

both in his individual capacity and as Superintendent of Schools; Plainedge Union Free School

District Board Of Education; Jennifer Thearle in her individual capacity and as Principal of

Charles E. Schwarting Elementary School; and Anthony Deriso in his individual capacity and as

principal of Plainedge Middle School:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs, Arnaldo Magnoni, Rachel Magnoni and Arnaldo M., a disabled infant with autism, ("Plaintiffs") or ("The Magnonis"), reside and have resided at 21 Moore Drive, Bethpage, New York, 11714 for the past 12 years, which is within the Plainedge School District lines, entitling their disabled, infant son, a 12-year-old boy, to attend Plainedge School District Schools for the past 6 years.

2.      Defendant, Plainedge Union Free School District, is a special district created under the auspices of The New York State Education Law (hereinafter "Defendant" or "School District") and is tasked with providing a free education to the children living within the District from Kindergarten to twelfth grade and it is operated by a Board of Education.

3.      The School District maintains its principal office at 241 Wyngate Drive, Massapequa, New York 11758.

4.      Defendant, Plainedge Union Free School District Board of Education, (hereinafter "Defendant" or the "School Board") is an elected body currently comprised of seven (7) members who are residents of the district who are elected for a three-year term of office, consisting of a President, Vice President and five trustees.

5.      The School Board is legally responsible for operating the School District and for overseeing the Superintendent of Schools to ensure that he is implementing policies and procedures consistent with state and federal law.

6.      The School Board maintains its principal office at 241 Wyngate Drive, Massapequa, New York 11758.  The current President of the School Board is Catherine Flanagan and its Vice President is Raymond Paris.

7.      Defendant, Edward A. Salina, Jr., (hereinafter "Defendant" or "Superintendent") is the Superintendent of Schools of the Plainedge School District and serves at the pleasure of the Board of Education for the purposes of supervising and overseeing the school district and is also responsible for the day-to-day operations of the school district in addition to being responsible for the implementation and oversight of School District Policies.  Upon information and belief, The Superintendent is also tasked with ensuring that the School District complies with all state and federal laws.

8.      The Superintendent was also responsible for supervising and overseeing the Principals of all of the schools in the School District including oversight of the Principals of each school in the district.

9.      The Superintendent maintains his principal office at 241 Wyngate Drive, Massapequa, New York 11758.

10.     Defendant, Anthony Deriso, (hereinafter "Defendant" or "Deriso") was and is the Principal of the Plainedge Middle School, the current school attended by the Infant Plaintiff A.M.

11.     Deriso is the Principal at Plainedge Middle School (hereinafter the "Middle School") and at all times hereinafter relevant, Deriso was responsible for enforcing School District Policy and overseeing the day-to-day operations of Middle School on behalf of the School District.

12.     Defendant, Jennifer Thearle, (hereinafter "Defendant" or "Thearle") was and is the Principal of the Charles E. Schwarting Elementary School, the prior school attended by the Infant Plaintiff A.M.

13.     Thearle is the Principal at the Charles E. Schwarting Elementary School (hereinafter the "Elementary School") and at all times hereinafter relevant, Thearle was responsible for enforcing School District Policy and overseeing the day-to-day operations of the Elementary School on behalf of the School District.

14.     The Defendants were subject to FERPA and IDEA at the time that the breach of the Plaintiff's privacy rights occurred as the Union Free Public Schools, the Union Free Public-School District, the Public-School District Board of Education and the named employees of the Union Free School District were and are receiving funds under an applicable program of the United States Education Department.

15.     The Defendants were all responsible to create, implement and enforce policies to ensure, enforce, oversee and supervise that Infant Plaintiff's personally identifiable information (hereinafter "PII") was not provided to a third party without the authority to obtain such PII under  IDEA, in accordance with New York State Education Law § 2-d, the Individuals with Disabilities Education Act (hereinafter "IDEA") and the regulations promulgated thereunder, as set forth in 34 C.F.R. 300 *et seq.* and the Family Rights and Privacy Act ( hereinafter "FERPA") specifically as it relates to the protection of a Student's personally identifiable information.

16.     Defendants failed in their duty and violated the federal rights to privacy of the Infant Plaintiff and his parents and furthermore failed to implement sufficient and necessary School District Policies to ensure that the Infant Plaintiff and his Parent's Federal and State Privacy rights were not abridged as set forth more fully herein-below.

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under 42 U.S.C. §1983, 20 U.S.C. §1232g, 34 C.F.R. §99 Family Educational

Rights and Privacy Act (FERPA) and 20 U.S.C. 1400 *et seq.* the Individuals with Disabilities

Education Act (IDEA).

18.     This Court has supplemental jurisdiction to hear any and all state law claims that

are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

19.     Venue lies in this district pursuant to 28 U.S.C. §1391(b), as plaintiffs and a

majority if not all of the defendants reside within the District and the acts complained of took

place within the district.

## INTRODUCTION

20.   Plaintiff restates and incorporates all of his statements and allegations contained

in the preceding paragraphs in their entirety, as if set forth more fully herein.

21.   42 U.S.C. §1983 was enacted on April 20 1871 as part of the Civil Rights Act of

1871 known as the "Ku Klux Klan Act" and commonly referred to now as Section 1983 creates

remedies to remedy constitutional rights and federal law violations.

22.   Federal Courts have long held that section 1983 creates remedies and not

substantive rights.

23.   Since the 1960's the Federal Courts and, in fact, The Supreme Court of the United

States have consistently held that Section 1983 is the predominant vehicle to enforce a bevy of

rights created under Federal Law, including the rights of parents and individuals pursuant to

FERPA and IDEA.

24.   FERPA also referred to as the Buckley Amendment was enacted on August 21,

1974.

25.    Per the legislative history, as originally enacted, covered institutions could not have a policy of permitting the release of personally identifiable records or files (or personal information contained therein) (§1232g(b)(1)), or a policy or practice of furnishing, in any form, any personally identifiable information contained in personal school records (§1232g(b)(2)), unless there is written consent from parents specifying records to be released, reasons for release, and parties to whom records may be released. The 1974 amendments clarified that agencies and institutions may not have "a policy or practice of permitting the release of [or providing access to] education records (or personally identifiable information contained therein other than directory information" without a parent's prior written consent.

26.    IDEA is a Federal Statute which was enacted on October 30, 1990 with a specific stated objective to protect a student's confidential information which prohibits the release of such information without the express written consent of a child's parents.

27.    IDEA further requires that as part of a parent's informed consent, all of the necessary information must be provided to the parent before actual consent can be given.

28.    The Infant Plaintiff, a 12-year-old boy has been diagnosed with autism, has an Individualized Education Program (IEP) and is a covered individual under IDEA.

29.    During the course of his attendance at both the Elementary School and the Middle School the infant Plaintiff's private information was released to an unauthorized third party without the Plaintiffs being made aware that the third party receiving the PII was actually a

relative, who The Magnonis had purposely excluded from the Infant Plaintiff's life, because of circumstances which are set forth more fully herein.

30.     Plaintiff has a private right of action for the claimed breaches under IDEA pursuant to 42 U.S.C. §1983 and pursuant to long standing precedent in numerous holdings set down by the United States Supreme Court.

31.     While no private right of action exists with respect to FERPA or § 2-d of the New York State Education Law (hereinafter "EDN"), Plaintiffs seeks a declaratory judgment that the Defendants' actions constitute a violation of FERPA and EDN §2-d.

32.     Plaintiffs' Section 1983 claims and IDEA claims against defendants arise due to the Defendants' failure to keep the Infant Plaintiff's personally identifiable information confidential, as is required not only under IDEA but also in accordance with FERPA and EDN §2-d.

## STATEMENT OF RELEVANT FACTS

33.     On January 17, 2017 Plaintiff, Rachel Magnoni, contacted the Infant Plaintiff's middle school teacher to discover the identity of an "anonymous donor" that had been giving gifts for holidays, such as Halloween and Christmas, to the special education children in the Infant Plaintiff's class and visiting the Middle School since the beginning of the school year See Plaintiff's **Exhibit "A"**, (Aff. Of Merit of Rachel Magnoni ¶9).

34.     The Magnonis sought to discover the identity of the anonymous donor after learning that the "donor" was an individual, a fact that was never disclosed to the Magnonis prior to signing a consent form regarding the gifts. *See* Plaintiff's **Exhibit "A"** (Aff. Of Merit of Rachel Magnoni ¶¶ 6 & 7).

35.    The Magnonis became suspicious after seeing a note which was attached to a gift which was "donated" to the Infant plaintiff for Christmas and also upon discovering that the anonymous donor was not giving gifts to the special education children in any class other than the Infant Plaintiff's class. *See* Plaintiff's **Exhibit "A"** (Aff. Of Merit of Rachel Magnoni ¶¶ 5).

36.    Additionally, the Magnonis found it suspicious that the anonymous donor who, had been donating gifts to all of the special education children in the Elementary School for the 2014-2015 school year and who continued to make donations to special education children in the Infant Plaintiff's class, was no longer donating gifts to the special education students in the Elementary School once the Infant Plaintiff graduated from the Elementary School and entered the Middle School. *See* Plaintiff's **Exhibit "A"** (Aff. Of Merit of Rachel Magnoni ¶8)

37.    On January 18, 2017, Defendant Deriso confirmed that the anonymous donor was, in fact, Renata Magnoni, the Infant Plaintiff's Aunt, a person whom the Plaintiffs had consciously and vehemently excluded from the Infant Plaintiff's life.

38.    On the very same day after receiving confirmation of the identity of the anonymous donor from Deriso, Plaintiffs immediately filed a complaint and received a police report from the Nassau County Police Department. See Plaintiffs' **Exhibit "B"**.

39.    The following day, on January 19, 2017 the Magnonis filed a Family Offense Petition with the Nassau County Family Court.  See Plaintiff's **Exhibit "C"**.

40.    On January 19, 2017, the Nassau County Family Court issued a temporary order of protection restraining Renata Magnoni from taking actions in connection with the Infant Plaintiff. See Plaintiff's **Exhibit "D"**.

41.    On January 24, 2017 despite having knowledge that the Magnonis sought a

temporary order of protection against Renata Magnoni, Deriso wrote a letter on Plainedge

Middle School letterhead stating that "The Parents of one of our special Education program, Mr.

and Mrs. Arnaldo Magnoni, have made it clear that they would prefer that Renata Magnoni not

visit Plainedge Middle School in the future". See Plaintiff's **Exhibit "E"**.

42.    Thus, despite knowledge of the severity of the situation after having been

informed by the Plaintiffs that they sought and obtained a temporary restraining order, it can be

inferred from the letter that the District failed to implement or had no clear procedure regarding

the disclosure of confidential PII to an unauthorized third party.

43.    At all times hereinafter mentioned, not one of the Defendants informed the

Plaintiffs that the anonymous donor was an individual with whom the plaintiffs were familiar

until after the Plaintiffs demanded to know the identity of the "anonymous donor".

44.    None of the defendants thought to seek informed consent from the Magnonis that

the "anonymous donor" was a relative of their child before seeking to release pictures and

confidential information about their child with autism, who was and is unable to understand that

a dangerous relative was seeking contact with him. *See* Plaintiff's **Exhibit "A"** (Aff. Of Merit of

Rachel Magnoni ¶13)

45.    The consent form issued by the Schools also did not disclose that other private

information about the children was also being disclosed such as information about which types

of gifts and sweets they preferred, the name of the child matched with a photo of the child, the

child's classroom number and the location of the classroom within the school.

46.    Had the Magnonis been informed that the anonymous donor was in fact the Infant

Plaintiff's Aunt, Renata Magnoni, the Plaintiff never would have consented to any information about the Infant Plaintiff being released nor would they have permitted the anonymous donor" to visit the school where the Infant Plaintiff receives his education.

47.     The Magnonis made it clear to the Infant Plaintiff's Aunt that she was not to have any contact with the Infant Plaintiff.

48.     Upon information and belief, Renata Magnoni was and may still be receiving treatment for various mental health issues.

49.     Additionally, Renata Magnoni had been known to become violent and was arrested by the Nassau County Police Department for assaulting her elderly mother by throwing a telephone at her mother's head.

50.     While formal charges were never filed because Renata's mother did not wish to see her daughter go to jail for assault, upon information and belief, there is a record of the violent incident although are not in possession of the police report.  *See* Arnaldo Magnoni Affidavit of Merit, Plaintiff's **Exhibit "F"**.

51.     Additionally, Renata Magnoni, owns a process service business and as a result was granted a permit to carry a firearm many years ago, (Aff. Of Merit of Arnaldo Magnoni ¶25), *see* Plaintiff's **Exhibit "F"**.

52.     Upon information and belief, Renata Magnoni carries a concealed, loaded firearm about her person, from time to time in connection with her livelihood as a process server (Aff. Of Merit of Arnaldo Magnoni ¶25), *see* Plaintiff's **Exhibit "F"**.

53.     Renata Magnoni devised the scheme to donate gifts to all of the special education

Students in the Infant Plaintiff's class as a means of obfuscating her true intention to receive

private information about her nephew who she was forbidden by Plaintiff's to see or take any

part in his life.

54.   Defendants knew or should have known that the anonymous donations were being

made by an individual who was clearly related to one of the children[1] .

55.    Defendants failed to inform the parents of the child that a relative was making

anonymous donations to their child in exchange for private information which should not have

been disclosed without the parents' informed consent which never would have been given, had

the Plaintiffs known.

56.   Defendants, Board of Education, School District and Superintendent are liable to

Plaintiffs for failing to provide, implement and insure compliance with privacy policies (or the

lack thereof) resulting in the abridgement of Plaintiffs' right to privacy as created under IDEA

and as defined by FERPA.

57.   Defendants, Board of Education, School District and Superintendents' failed to

institute a privacy policy which was adequate to prevent confidential information from being

disseminated to unauthorized third parties and as such was the proximate cause of the violation.

58.   Defendants, Board of Education, School District and Superintendents' failed to

implement and insure compliance with District Privacy Policies or the lack thereof, as enacted by

the Board of Education and as overseen by the Superintendent and as such is the proximate cause

of the violation.

59.    Moreover, the Principals acts and failure to protect the privacy afforded to

---

[1] Both the Infant Plaintiff and his Aunt have the same last name and the gifts being donated were only for the children in the Infant Plaintiff's grade.

Plaintiffs pursuant to IDEA, as defined by FERPA were the proximate cause of the abridgement of Plaintiffs' federally guaranteed rights.

60.    Plaintiffs have no other relief available to them but to commence a federal law suit because it is not possible to exhaust all administrative forms of relief provided for under IDEA which is limited to denial of a FAPE which does not concern the specific violations of IDEA and 42 U.S.C. §1983 complained of herein.

## COUNT ONE: VIOLATIONS OF 42 U.S.C. §1983 AS TO ALL DEFENDANTS OARD OF EDUCATION, SUPERINTENDENT, DERISO AND THEARLE ONLY

61.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 60 of the Complaint in their entirety, as if set forth more fully herein.

62.    42 U.S.C. § 1983 states in relevant part that:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress"

63.    Relief pursuant to §1983 is warranted where:

(1) a violation of rights protected by the Constitution or created by Federal

Statute

(2) The violation was Proximately Caused by The Defendants

(3) By conduct of a "person"

(4) Acting under color of state law

64.    Pursuant to IDEA and the regulations promulgated thereunder, at 34 C.F.R.

§300.610 a local agency, such as a school district, must ensure the protection of the infant and his parents with respect to their federal right to confidentiality of the infant child's personably identifiable information.

The regulations further define the term personally identifiable information as follows:

**"§300.32   Personally identifiable.**

*Personally identifiable* means information that contains—

(a) The name of the child, the child's parent, or other family member;

(b) The address of the child;

(c) A personal identifier, such as the child's social security number or student number; or

(d) A list of personal characteristics or other information that would make it possible to identify the child with reasonable certainty."

65.    The School District, the School Board, and the Superintendent failed to implement sufficient procedures and safeguards to ensure that a third party (the Infant Plaintiff's Aunt, who has absolutely no right to the Infant Plaintiff's PII, such that the third party was provided with the Infant Plaintiff's name and photograph as well as his classroom number that make it possible to identify the infant plaintiff with reasonable certainty.

66.     Both Thearle and Deriso actually provided the name and photograph of the Infant Plaintiff to an unauthorized third party.

67.    All of the above-named defendants in count one was the direct and proximate cause of the violation of Plaintiffs' federally protected right to insure the confidentiality of the Plaintiffs' PII.

68.    The defendants also did not have consent of the Plaintiffs to abridge that right to confidentiality even though a consent form was signed because consent pursuant to 20 U.S.C. 1414(a)(1)(D) and as promulgated by the regulations at §300.9 define consent as:

"*Consent* means that—(a) The parent has been fully informed of all information relevant to the activity for which consent is sought, in his or her native language, or through another mode of communication;"

69.    Defendants failed to inform the parents of all of the information relevant to the activity for which consent is sought because the Defendants failed to disclose the identity of the unauthorized third party to whom the Infant Plaintiff's PII was being disclosed because had the Plaintiff Parents known the identity of the party to whom their child's personally identifiable information was being given, they would never have consented to that party receiving the information.

70.    Defendants were all working under the color of law because they were acting in their capacity as school officials and/or acting as if they were pretending to act in the performance of their official duties.

71.    As such, the above-named defendants (as to Count One) under color of state law deprived the Plaintiffs of their federally protected right to keep the Infant Plaintiff's PII confidential and further by failing to keep the confidential PII confidential potentially endangered Plaintiffs; and allowing unauthorized access to the Infant Plaintiff such that the Plaintiffs sought and received a temporary restraining order against the unauthorized third party to whom the confidential information was given.

## COUNT TWO: VIOLATIONS OF 20 U.S.C. §1400 *et seq.* AS TO DEFENDANTS BOARD OF EDUCATION, SUPERINTENDENT, DERISO AND THEARLE ONLY

72.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 71 of the Complaint in their entirety, as if set forth more fully herein.

73.    Pursuant to 20 U.S.C. §1417 (IDEA) which states in relevant part that all local educational agencies, which includes school districts, must protect the confidentiality of the personally identifiable information of its students in accordance with 20 U.S.C. §1232(g) (b) (1) (FERPA) which states that:

> "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a)) of students without the written consent of their parents to any individual, agency, or organization, other than to the following…"

74.    While there are certain exceptions of classes or persons to whom confidential PII may be released without parental consent, the Infant Plaintiff's Aunt is not a member of any class of persons who would be entitled to the Infant Plaintiff's PII, nor could Infant Plaintiff's Aunt be categorized under any circumstances as a person entitled to the Infant Plaintiff's confidential PII.

75.    The regulations promulgated under IDEA define the term personally identifiable information as follows:

**§300.32  Personally identifiable.**

*"Personally identifiable* means information that contains—

(a) The name of the child, the child's parent, or other family member;

(b) The address of the child;

(c) A personal identifier, such as the child's social security number or student number; or

(d) A list of personal characteristics or other information that would make it possible to identify the child with reasonable certainty."

76.    The School District, the School Board, and the Superintendent failed to

implement sufficient procedures and safeguards to ensure that a third party (the Infant Plaintiff's Aunt, who has absolutely no right to the Infant Plaintiff's PII, such that the third party was provided with the Infant Plaintiff's name and photograph as well as his classroom number that make it possible to identify the infant plaintiff with reasonable certainty.

77.     Both Thearle and Deriso actually provided the name and photograph of the Infant Plaintiff to an unauthorized third party.

78.     All of the above-named defendants in count one was the direct and proximate cause of the violation of Plaintiffs' federally protected right to insure the confidentiality of the Plaintiffs' PII.

79.     The defendants also did not have consent of the Plaintiffs to abridge that right to confidentiality even though a consent form was signed because consent pursuant to 20 U.S.C. §1414(a)(1)(D) and as promulgated by the regulations at §300.9 defines consent for purposes of IDEA as:

> *"Consent* means that—(a) The parent has been fully informed of all information relevant to the activity for which consent is sought, in his or her native language, or through another mode of communication;"

80.     Defendants failed to inform the parents of all of the information relevant to the activity for which consent is sought because the Defendants failed to disclose the identity of the unauthorized third party to whom the Infant Plaintiff's PII was being disclosed because had the Plaintiff Parents known the identity of the party to whom their child's personally identifiable information was being given, they would never have consented to that party receiving the information.

81.     Defendants were all working under the color of law because they were acting in

their capacity as school officials and/or acting as if they were pretending to act in the performance of their official duties.

82.    As such, the above-named defendants as to Count One under color of state law deprived the Plaintiffs of their federally protected right to keep the Plaintiffs PII confidential and further by failing to keep the confidential PII confidential potentially endangered Plaintiffs and allowed unauthorized access to the Infant Plaintiff such that the Plaintiffs sought and received a temporary restraining order against the unauthorized third party to whom the confidential information was given.

## COUNT THREE: VIOLATIONS OF 20 U.S.C. §1232(g) (FERPA) *et seq.* AS TO ALL DEFENDANTS FOR A DECLARATORY JUDGMENT ONLY

83.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 82 of the Complaint in their entirety, as if set forth more fully herein.

84.    Pursuant to The Declaratory Judgment Act 28U.S.C.A. § 2201 et seq. which states in relevant part that:

> "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, **whether or not further relief is or could be sought.** Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *(Emphasis Added).*

85.    Defendants jointly and severally abridged the privacy rights of the Plaintiffs for purposes of FERPA by disclosing personally identifiable information to an unauthorized third party.

86.    As a direct and proximate cause of Defendants' violation of FERPA's confidentiality obligations, the Infant Plaintiff was potentially placed in danger from his Aunt, who the Infant Plaintiff's parents consciously chose to forbid access to the infant Plaintiff due to

a history of mental illness, an arrest due to violent acts against a family member and the fact that

the Infant Plaintiff's Aunt, upon information and belief, was and is licensed to carry a fire arm

*See* Plaintiff's **Exhibit "A"** (Aff. Of Merit of Arnaldo Magnoni ¶25).

87.   Defendants failed to enact policies and procedures sufficient to prevent the

Defendants from releasing private and confidential personally identifiable information to an

unauthorized third party and failed to disclose all of the necessary information to the Plaintiffs

such that any consent given was an informed consent.

88.   By withholding crucial information from Plaintiffs, consent, if any was given,

would be meaningless since the Defendants failed to disclose crucial information which had they

disclosed it, consent would never have been given.

89.   As such, Plaintiffs seek a declaratory judgment that Defendants violated the

confidentiality requirements of FERPA.

## COUNT FOUR: VIOLATIONS OF THE NEW YORK EDUCCATION LAW §2-d AS TO ALL DEFENDANTS FOR A DECLARATORY JUDGMENT ONLY

90.   Plaintiffs restate and incorporate all of their statements and allegations contained

in paragraphs 1 through 89 of the Complaint in their entirety, as if set forth more fully herein.

91.   Pursuant to The Declaratory Judgment Act 28U.S.C.A. § 2201 et seq. which

states in relevant part that:

> "any court of the United States, upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any interested party seeking such
> declaration, **whether or not further relief is or could be sought.** Any such
> declaration shall have the force and effect of a final judgment or decree and shall
> be reviewable as such." *(Emphasis Added).*

92.   Defendants jointly and severally abridged the privacy rights of the Plaintiffs for

purposes of EDN 2-d by disclosing personally identifiable information to an unauthorized third party.

93.    Pursuant to EDN §2-d each educational agency, which includes school districts shall create a Parent Bill of Rights that outlines certain obligations which must be undertaken by the School District to ensure the privacy of student data and in particular PII. In accordance with EDN §2-d School Districts must comply with all State and federal laws to protect the confidentiality of personally identifiable information, and safeguards associated with industry standards and best practices, including but not limited to, encryption, firewalls, and password protection, must be in place when data is stored or transferred.

94.    Defendants violated the Parents Bill of Rights by disclosing Infant Plaintiff's PII to an unauthorized third party.

95.    As such, Plaintiffs are entitled to a declaratory judgment that Defendants violated EDN §2-d.

**WHEREFORE**, Plaintiffs pray for the entry of judgment in his favor and against Defendants as follows:

A.    Finding that All Defendants violated 42 U.S.C. 1983;

B.    Funding that Defendants, Plainedge School District Board of Education; Superintendent Edward A. Salina, Jr.; Principal Deriso and Principal Thearle violated 20 U.S.C. §1440 *et seq.*

C.    Awarding Plaintiffs compensatory damages, statutory damages, and punitive damages, costs and reasonable attorney fees as to Counts One and Two;

D.     Awarding Plaintiffs a Declaratory Judgment that Defendants violated 20 U.S.C.

§1232g as to Count Three;

E.     Awarding a Declaratory Judgment that Defendants violated New York Education

Law § 2-d as to Count Four;

F.     Granting Plaintiffs such other and further relief this Court may deem just and

proper.

Dated:  Woodbury, New York
        July 7, 2017

Respectfully submitted,

/s/ Darren Aronow
Darren Aronow
ARONOW LAW PC
20 Crossways Park Drive, North Suite 210
Woodbury, New York 11797
Tel. (516) 762-6700
Fax. (516) 303-0066

TO:
**Plainedge Union Free School District**
241 Wyngate Dr.
Massapequa, NY 11758

**Edward A. Salina, Jr. EdD.**
241 Wyngate Dr.
Massapequa, NY 11758

**Plainedge U.F.S.D. Board of Education**
241 Wyngate Dr.
Massapequa, NY 11758

**Charles E. Schwarting Elementary School**
**Principal Jennifer Thearle**
Jerusalem Avenue and Flower Road,
North Massapequa, NY 11758

**Plainedge Middle School**
**Principal Anthony DeRiso**
200 Stewart Avenue,
Bethpage, NY 11714