UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ARNALDO MAGNONI and RACHEL
MAGNONI, in their individual capacities and as
the parents and legal guardians of A.M., a disabled
infant,

                    Plaintiffs,

- against –

PLAINEDGE UNION FREE SCHOOL
DISTRICT, EDWARD A. SALINA JR.,
individually and as a Superintendent of Schools,
PLAINEDGE UNION FREE SCHOOL
DISTRICT BOARD OF ED., JENNIFER
THEARLE, individually and as a Principal, and
ANTHONY DERISO, individually and as a
Principal,

                         Defendants.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**
2:17-cv-4043 (DRH)(AKT)

**APPEARANCES**

**ARONOW LAW P.C.**
Attorney for Plaintiffs
20 Crossways Park Drive North, Suite 210
Woodbury, NY 11797
By:    Darren Arthur Aronow, Esq.

**SOKOLOFF STERN LLP**
Attorneys for Defendants
179 Westbury Ave.
Carle Place, NY 11514
By:    Steven C. Stern, Esq.
          Melissa Lauren Holtzer, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

    Plaintiffs Arnaldo Magnoni and Rachel Magnoni ("Plaintiffs"), in their individual

capacities and as the parents and legal guardians of A.M. (a disabled infant) brought this action

against Plainedge Union Free School District ("School District"), Edward A. Salina Jr., individually and as a Superintendent of Schools ("Superintendent"), Plainedge Union Free School District Board of Education ("Board"), Jennifer Thearle, individually and as a Principal, and Anthony Deriso, individually and as a Principal, for violations of 42 U.S.C. § 1983, the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1400 et seq., the Family Education Rights and Privacy Act ("FERPA") 20 U.S.C. § 1232(g), and New York Education Law § 2-d. Plaintiffs allege that Defendants breached their privacy rights by releasing personally identifiable information ("PII") "to a third party without the authority to obtain such PII." (Compl. [DE 1] ¶ 15.) Defendants have moved for a motion to dismiss. For the reasons discussed below, the motion is granted in its entirety.

## BACKGROUND

The following relevant facts come from the Complaint and are assumed true for purposes of the motion to dismiss.

Plaintiffs Arnaldo and Rachel Magnoni ("Parents) are parents and legal guardians of A.M., a disabled 12-year old boy with autism. (Compl. ¶ 1.) Plaintiff A.M. has an Individualized Education Program ("IEP"). (*Id.* ¶ 28.) Plaintiff A.M. has attended schools in the Plainedge School District for six years; he currently attends the Plainedge Middle School ("Middle School"), and previously attended the Charles E. Schwarting Elementary School ("Elementary School"). (*Id.* ¶ 2.) Defendant School District is a special district created under the auspices of the New York State Education Law. (*Id.*) Defendant Board "is an elected body currently comprised of seven (7) members who are residents of the district who are elected for a three-year term of office, consisting of a President, Vice President and five trustees." (*Id.* ¶ 4.) The Board is "responsible for operating the School District and for overseeing the

Superintendent of Schools" as well as the principals of all schools.  (*Id.* ¶¶ 5, 8.)  Defendant Salina is the Superintendent of the School District.  (*Id.* ¶ 7.)  Defendant Deriso is the Principal of Plainedge Middle School, the infant A.M.'s current school.  (*Id.* ¶ 11.)  Defendant Thearle is the Principal of Charles E. Schwarting Elementary School, the infant A.M.'s prior school.  (*Id.* ¶ 12.)

    In the 2014-2015 school year, while Plaintiff A.M. was a student at the Elementary School, an "anonymous donor" began donating holiday gifts to the special education children in Plaintiff A.M.'s class on Halloween and Christmas.  (*Id.* ¶¶ 33, 36.)  The parents of the children in this class were required to sign a consent form regarding the gifts, but they were not told the anonymous donor's identify.[1]  (*Id.* ¶ 34.)  The anonymous donor did not give gifts to the students in any other class.  (*Id.* ¶ 35.)  Plaintiffs do not specify the nature of these gifts in the Complaint, but they do not dispute Defendants' assertion in the Memorandum in Support that the donations included candy and toys for the children.  (*See* Defs.' Mem. in Supp. [DE 12] at 1 (hereinafter "Mem. in Supp.".)  When Plaintiff A.M. graduated and entered the Middle School, the anonymous donor stopped making donations to the Elementary School and began making donations to the Middle School.  (Compl. ¶ 36.)  The Complaint is not clear on the question of whether the anonymous donor received pictures and information about the students in the Elementary School in exchange for the gift, however Defendants state in their Memorandum in Support that they told the anonymous donor Plaintiff A.M.'s name, preference in candy and toys, and classroom number.  (Def.'s Reply Mem. [DE 18] at 3–4 (hereinafter "Reply Mem.".)

---

[1] The Court was not presented with a copy of the consent, but based on the brief description in the Complaint it appears that the consent only covered acceptance of gifts and candy from an anonymous donor, and not the release of information to the anonymous donor.  (Compl. ¶ 45.)  Defendants do not address the consent.

Defendants also gave the anonymous donor a photograph, but neither Defendants nor Plaintiffs state whether the photograph was of just Plaintiff A.M. or of his entire class.  (*See id.*)

Plaintiff Parents "became suspicious after seeing a note which was attached to a gift [that] was 'donated'" to Plaintiff A.M. for Christmas.  (Compl. ¶ 35.)  On January 17, 2017, Plaintiff Rachel Magnoni contacted Plaintiff A.M.'s middle school teacher about the identity of the anonymous donor.  (*Id.* ¶ 33.)  On January 18, 2017, Defendant Deriso informed Plaintiff Parents that the anonymous donor was Renata Magnoni—Plaintiff Arnaldo Magnoni's sister and Plaintiff A.M.'s aunt.  (*Id.* ¶ 37.)  Plaintiffs had "consciously and vehemently excluded" Renata Magnoni from Plaintiff A.M.'s life due to concerns about her mental stability and violent tendencies, including her arrest for allegedly assaulting her elderly mother by throwing a telephone at the mother's head.  (*Id.* ¶¶ 37, 48–49.)

The same day that Plaintiffs learned that Renata Magnoni was the anonymous donor, Plaintiffs filed a complaint and received a police report from the Nassau County Police Department.  (*Id.* ¶ 38.)  The following day, Plaintiffs filed a Family Offense Petition with the Nassau County Family Court.  (*Id.* ¶ 39.)  The Nassau Family Court issued a temporary order of protection restraining Renata Magnoni from "taking actions in connection with the Infant Plaintiff."  (*Id.* ¶ 40.)  Defendants were aware that Plaintiffs had been granted a temporary order of protection against Renata Magnoni.  (*Id.* ¶ 41.)  On January 24, 2017, Defendant Deriso wrote a letter on the Middle School letterhead stating: "The Parents of one of our special Education program [students], Mr. and Mrs. Arnaldo Magnoni, have made it clear that they would prefer that Renata Magnoni not visit Plainedge Middle School in the future."  (*Id.*)  Plaintiffs filed the instant action on July 7, 2017—with no explanation as to what happened in the intervening six months.  As far as the Court can glean from the Complaint and the moving papers, there has been

no further contact between Plaintiff and Renata Magnoni since Plaintiffs sought the temporary order of protection. (*See* Mem. in Supp. at 3.)

## LEGAL STANDARD

Defendants fail to specify the particular section of the federal rules upon which their motion to dismiss is predicated but, based on their repeated assertion that Plaintiffs have failed to state a claim, the Court assumes that Plaintiffs intend to move pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6).

In deciding a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## DISCUSSION

### I.     *The Parties' Arguments*

Plaintiffs bring four causes of action against Defendants. The first is for violations of 42 U.S.C. § 1983, pursuant to the IDEA and the regulations promulgated thereunder, for depriving "Plaintiffs of their federally protected right to keep the Infant Plaintiff's [personally identifiable information ("PII")] confidential and further by failing to keep the confidential PII confidential potentially endangered Plaintiffs[.]" (Compl. ¶ 71.) The second is for violations of the IDEA, 20 U.S.C. § 1417, for depriving "Plaintiffs of their federally protected right to keep the Plaintiffs' PII confidential and further by failing to keep the confidential PII confidential potentially endangered Plaintiffs[.]" (*Id.* ¶ 82.) The third is for declaratory judgment under FERPA, 20 U.S.C. § 1232(g), in that Defendants violated that statute's confidentiality requirements. (*Id.* ¶ 89.) Finally, Plaintiffs seek a declaratory judgment that Defendants violated New York Education Law §2-d "by disclosing personally identifiable information to an unauthorized third party." (*Id.* ¶¶ 92, 95.)

Defendants argue that Plaintiffs have failed to state a claim because FERPA provides no private right of action. (Mem. in Supp. at 1.) Further, Defendants aver that the IDEA only provides a private right of action "when a student or parent alleges a denial of a free appropriate public education," which is not the case here. (*Id.*) Finally, Defendants claim that New York Education Law §2-d only provides an administrative remedy, not a private right of action. (*Id.*)

Plaintiffs respond that "a private right of action exists for any violation of IDEA whether or not the violation is in connection with denial of a Free Appropriate Public Education[.]" (Mem. in Opp. [DE 14] at 1.) Additionally, Plaintiffs insist that under the Declaratory Judgment Act, 28 U.S.C. § 2201, they may seek declaratory judgment even if they cannot maintain a private right of action under either FERPA or New York Education Law §2-d. (*Id.* at 9.)

## II.   *Count I – 42 U.S.C. § 1983 Claim*

### a.   42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See* 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004). In addition, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back,* 365 F.3d at 122 (internal quotation marks and citation omitted).

b. Defendants' Motion is Granted as to Count I: Section 1983

Plaintiffs claim that "a private right of action exists against individuals who breach [the] IDEA" under § 198, however, Plaintiffs fail to provide any authority in support of their assertion. (Mem. in Opp. at 8 n. 6.) Nevertheless, Plaintiffs are correct that they may proceed under § 1983 given that the Second Circuit has opined that the IDEA is enforceable under § 1983 (though the Second Circuit stands alone in finding thus). *See DL v. District of Columbia*, 730 F. Supp. 2d 84, 90 (D.D.C. 2010) (explaining that the First, Third, Ninth, and D.C. circuits have held that the IDEA is *not* enforceable under § 1983, but that the Second Circuit has "noted in passing" that it is.) While in earlier cases it seems that the Second Circuit only intended for § 1983 to apply to the denial of a Free and Appropriate Public Education ("FAPE"), in later cases the Second Circuit appears to have expanded their holding to apply to IDEA claims more broadly. *Compare D.D. ex rel. v. New York City Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006) (explaining that the regulations related to an IEP "standing alone, do[] not create a federal right. Instead, it is the IDEA that creates the right to a free appropriate public education enforceable through § 1983") *with Smith v. Guilford Bd. of Educ.*, 226 Fed. Appx. 58, 63 (2d Cir. 2007) (holding that "[i]t is well-settled that, while the IDEA itself does not provide for monetary damages, plaintiffs may sue pursuant to § 1983 to enforce its provisions—including the right to a FAPE—and to obtain damages for violations of such provisions[,]" and then going on to overrule the district court's dismissal of plaintiffs' claim that defendants violated their child's statutory right to a FAPE.) Neither party provides controlling authority as to whether § 1983 applies to an IDEA action for an invasion of a student's privacy. However, based on the Second Circuit's expansive language in *Smith*, the Court will assume for present purposes that Plaintiffs may bring this action pursuant to § 1983.

Defendants argue that even if § 1983 does apply, Plaintiffs have still failed to state a claim upon which relief may be granted because Defendants "did not disclose education records in violation of the IDEA." (Mem. in Supp. at 1.) Specifically, Defendants aver that they disclosed "directory information," rather than PII, which they may disclose absent parental permission unless the parents affirmatively opt-out of disclosure. (Reply Mem. at 3.)

The IDEA provides that the "Secretary shall take appropriate action, in accordance with [20 U.S.C.] section 1232g . . . to ensure the protection of the confidentiality of any personally identifiable data, information, and records collected or maintained by the Secretary and by State educational agencies and local educational agencies[.]" 20 U.S.C. § 1417. Section 1232g provides in relevant part that "[n]o funds shall be made available . . . to any educational institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . . ) of students without the written consent of their parents to any individual, agency, or organization[.]" 20 U.S.C. § 1232g(b)(1). In other words, under the IDEA an educational institution may not disclose PII without consent, but they may disclose directory information. *See id.*

The IDEA defines PII as information that contains—

(a) The name of the child, the child's parent, or other family member; (b) The address of the child; (c) A personal identifier, such as the child's social security number or student number; or (d) A list of personal characteristics or other information that would make it possible to identify the child with reasonable certainty.

34 C.F.R. § 300.32; *see also* 20 U.S.C. § 1415(a). Neither the IDEA nor the IDEA regulations specifically define the term "directory information." However, the IDEA defines education records as "the type of records covered under the definition of 'education records' in 34 CFR

part 99 (the regulations implementing [FERPA]).” 34 C.F.R. § 300.611(b). In 34 C.F.R. part 99, “directory information” is defined as “information contained in an education record of a student that would not generally be considered harmful or an invasion of privacy if disclosed.” 34 C.F.R. § 99.3. The regulations further provide that directory information includes, but is not limited to:

> [T]he student’s name; address; telephone listing; electronic mail address; photograph; date and place of birth; major field of study; grade level; enrollment status (e.g., undergraduate or graduate, full-time or part-time); dates of attendance; participation in officially recognized activities and sports; weight and height of members of athletic teams; degrees, honors, and awards received; and the most recent educational agency or institution attended.[2]

*Id.* Interestingly, a student’s name is listed as both PII and directory information.

Here, Defendants do not dispute that they disclosed Plaintiff A.M.’s “name, photograph, classroom, and favorite types of candy and snacks” to his estranged Aunt. (Reply. Mem. at 3–4.) A student’s name and photograph are both specifically listed as directory information under 34 C.F.R. § 99.3, and may be disclosed without prior consent. Therefore, the only outstanding question is whether Defendants permissibly disclosed Plaintiff A.M.’s classroom and preferred types of candy and snacks. Based on the definition of “directory information” as information that would not generally be considered harmful or an invasion of privacy, the Court finds that a student’s classroom and favorite candy is directory information rather than PII. *See* 34 C.F.R. § 99.3. By contrast, the type of information that qualifies as PII is highly sensitive information that could be used to identify or steal the identity of a child such as a social security number or a personal characteristic. *See* 34 C.F.R. § 300.32. Neither a student’s classroom nor his favorite type of candy is the type of information that could be used in this way; there are usually many

---

[2] FERPA itself defines “directory information” similarly but does not include photographs as directory information.

children in a given classroom, and a child's favorite candy could be the favorite candy of any number of other children.

Based on the foregoing, the Court finds that even if Plaintiffs can bring an IDEA claim under § 1983 in the Second Circuit, they have failed to state a claim here. Accordingly, Plaintiffs' first cause of action is dismissed.[3]

III.    *Count II – IDEA Claim*

a.    The IDEA

The IDEA requires states receiving federal funding to provide a FAPE to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). The IDEA requires an aggrieved party to exhaust all administrative remedies before commencing a federal civil action, subject to certain exceptions. *See, e.g.*, *J.S. ex rel N.S. v. Attica Cent. School*, 386 F. 3d 107, 112 (2d Cir. 2004); *L.K. v. Sewanhaka*, 2015 WL 12964663, at *8 (E.D.N.Y. July 16, 2015).

b.    Defendants' Motion is Granted as to Count II: the IDEA

The Supreme Court has recently confirmed that the IDEA only provides a private right of action for individuals challenging the denial of a FAPE under 20 U.S.C. § 1415. *Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 755 (2017) ("the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE.")

In an attempt to circumvent the holding in *Fry*, Plaintiffs cite to a Second Circuit case from 2002 in support of their proposition that the IDEA provides other remedies under certain circumstances. (*See* Mem. in Opp. at 7 (citing *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002)). Besides the fact that *Fry* controls over an older Circuit Court case, Plaintiff's

---

[3] Plaintiffs have not asserted a *Monell* claim against the School District or the Board. Moreover, there are no allegations of personal actions taken by the Superintendent. Therefore, there are no other actions that may proceed under § 1983.

argument is unavailing because the Second Circuit itself has held that a local education authority's failure to provide a FAPE is the sole private right of action permitted by the IDEA. *See County of Westchester v. New York*, 286 F.3d 150, 152 (2d Cir. 2002). In *County of Westchester*, the Second Circuit explained that

> Since Congress expressly provided a private right of action in favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under subsection 1415, *see* 20 U.S.C. § 1415(i)(2)(A), but did not expressly provide a private right of action in favor of [other groups] . . . we find it extremely unlikely that Congress intended to do so.

*Id.* (citing *Transamercia Mortg. Advisors, Inc. (TAMA) v. Lewis*, 441 U.S. 11, 20 (1979) ("In view of those express provisions for enforcing the duties imposed . . . , it is highly improbable that Congress absentmindedly forgot to mention an intended private action.") (internal quotations omitted)); *see also Y.D. v. New York City Dep't of Educ.*, 2016 WL 698139, at *4 (S.D.N.Y. Feb. 18, 2016) (quoting the same); *Scaggs v. New York Dep't of Educ.*, 2007 WL 1456221, at *9 (E.D.N.Y. May 16, 2007) ("In the absence of any support for the notion that another section of the IDEA statute permits plaintiffs to bring the instant claim or that an implicit private right of action is available under the Act, the Court finds that any IDEA claims must be brought pursuant to Section 1415.").

While an attempt to assert a private right of action under the IDEA seems a fruitless pursuit, Plaintiffs further undermine their argument by asserting in their Memorandum in Opposition that the sole section of the IDEA that Defendants violated is 20 U.S.C. § 1439; a section under subchapter III of the IDEA, titled "Infants and Toddlers with Disabilities." Pursuant to § 1439(a), procedural safeguards are required to be included in a statewide system under § 1435(a)(13). Section 1435 limits the applicability of the procedural safeguards to "programs under this subchapter [III]." In other words, the provision Plaintiffs claim that

Defendants violated only applies to "infants and toddlers with disabilities." The term "infant and toddler with a disability" is defined in subchapter III as "an individual under 3 years of age who needs early intervention services" for certain delineated reasons, as well as "children with disabilities who are eligible for services under section 1419 of this title and who previously received services under this subchapter *until such children enter, or are eligible under State law to enter, kindergarten or elementary school*[.]" 20 U.S.C. § 1432(5) (emphasis added). As this action relates to events that transpired after Plaintiff A.M. entered elementary school, this provision clearly does not apply to him. (Compl. ¶ 1.) Accordingly, Plaintiffs' claim under § 1439 is dismissed.

In addition to citing 20 U.S.C. § 1439, Plaintiffs also quote 34 CFR § 300.610[4] in support of their proposition that Defendants were required to "take appropriate action, in accordance with section 444 of the General Education Provisions Act, to ensure the protection of the confidentiality of personally identifiable data, information, and records collected or maintained by the Secretary and by State educational agencies and local education agencies pursuant to this part." (*See also* Mem. in Opp. at 8.) Plaintiffs do not elaborate on how or why this regulation applies to Defendants. As the IDEA does not support private rights of action, the Court will not try to address this incomplete argument.[5]

In their Memorandum in Opposition, Plaintiffs do not attempt to make out any other specific claim against Defendants under the IDEA. However, in their Complaint, Plaintiffs seem to bring their claim under the IDEA pursuant to 20 U.S.C. § 1417, and the IDEA regulations at

---

[4] Plaintiffs incorrectly cite this provision as "300 CFR §617," which does not exist. Based on the language quoted, the Court concludes that Plaintiffs intended to cite 34 C.F.R. § 300.610. (*See* Mem. in Opp. at 8.)

[5] Likewise, as Plaintiffs' claims are all hereby dismissed, the Court will not address Defendants' moot argument that Plaintiffs were required to exhaust administrative remedies under the IDEA.

34 C.F.R. §§ 300.32, 300.9. (Compl. ¶¶ 75, 79.) As Plaintiffs do not cite or refer to these sections in their Memorandum in Opposition, the Court considers these arguments abandoned. Therefore, Defendants' motion is granted and Count II is dismissed.

    IV.    *Count III – FERPA Claim*

        a.  FERPA

"Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 278 (2002). The Act provides in relevant part:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . . ) of students without the written consent of their parents to any individual, agency, or organization.

20 U.S.C. § 1232g(b)(1). The purpose of FERPA is to "assure parents of students . . . access to their education records and to protect such individuals' right to privacy by limiting the transferability (and disclosure) of their records without their consent." *Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y. 1977) (quoting 120 Cong. Rec. S21497 (daily ed. Dec. 13, 1974) (joint remarks of Sen. Buckley and Sen. Pell)); *see also Khalil v. Pratt Institute*, 2017 WL 8813136, at *5 (E.D.N.Y. Dec. 11, 2017). FERPA acts "by threatening financial sanctions . . . to deter schools from adopting policies of releasing student records. *Rios*, 73 F.R.D. at 598. However, it is well-settled that FERPA does not provide a private right of action. *Gonzaga Univ.*, 536 U.S. at 289; *see also Khalil*, 2017 WL 8813136, at *5. As the Supreme Court held in *Gonzaga University*

> [I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action. FERPA's nondisclosure provisions contain no

rights-creating language . . . [t]hey therefore create no rights enforceable
under § 1983.

536 U.S. at 290.

     b.  The Declaratory Judgment Act

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 provides in relevant party that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  § 2201(a).

     c.  Defendants' Motion is Granted as to Count III: Declaratory Judgment Under
         FERPA

As discussed above, Plaintiffs argue that they are entitled to relief under FERPA even though FERPA does not provide a private right of action because they are only seeking a declaratory judgment.  (Mem. in Opp. at 9.)  In support, Plaintiffs point to the last clause of the DJA, which states that a court may grant a declaratory judgment even if no further relief could be sought.  28 U.S.C. § 2201(a).  However, neither Plaintiffs nor Defendants offer any case law or other authority on point regarding whether an individual may seek a declaratory judgment under FERPA.  After a thorough search, this Court was unable to find any controlling authority.  In fact, in the handful of cases presented with this question, no court has specifically answered whether an individual may seek a declaratory judgment under FERPA in light of the Supreme Court's holding in *Gonzaga.  See, e.g.*, *Owasso Independent School Dist. No. I-011 v. Falvo*, 534 U.S. 426, 429 (2002) (prior to the Court deciding *Gonzaga*, plaintiff sought declaratory judgment under FERPA regarding her children's school district's policy of peer grading, and the Supreme Court explained that it would not consider whether the plaintiff had individual standing to bring the action); *see also Schaefer v. U.S. Dept. of Educ.*, 2005 WL 3008516, at *3–4 (E.D. Mo. Nov.

9, 2005) (declining to consider the plaintiff's request for declaratory relief under FERPA on the basis that plaintiff was "barred by injunction from bringing suit on the issue" under an earlier state court action between the same parties).

As Defendants correctly note in their Reply Memorandum, the DJA is "procedural only" and "does not create an independent cause of action." *Chevron Corp v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)); *see also Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008) (explaining that the DJA "does not create substantive rights" (internal quotation marks omitted)). Thus, where an act "does not provide the legal predicate, the DJA cannot expand the statute's authority by doing so." *Chevron*, 667 F.3d at 245. Stated another way, "the DJA cannot create legal rights that do not otherwise exist[.]" *Id.*

As FERPA does not provide an individual right of action, the DJA cannot expand FERPA by doing so. *See id.* Even though the DJA provides that a court may grant a declaratory judgment even if no further relief could be sought, the precedent is clear; the DJA cannot create an individual right of action under FERPA if one does not exist. Therefore, Plaintiffs' claim for a declaratory judgment under FERPA is dismissed.

V. *Count IV – New York Education Law § 2-d Claims*

a. New York Education Law § 2-d

New York Education Law § 2-d prohibits the release of PII, and requires that schools comply with all state and federal laws that protect the confidentiality of PII. N.Y. Educ. Law § 2-d. As Plaintiffs concede, the New York Education Law explicitly states that "[n]othing in this section shall be construed as creating a private right of action against the department or an educational agency." *Id.* at § 2-d(7)(c); *see also* Compl. ¶ 31.

      b.   Defendants' Motion to Dismiss is Granted as to Count IV: Declaratory Judgment
          Under New York Education Law § 2-d

Mirroring their FERPA claim, Plaintiffs claim that even though no private action exists under FERPA, they may seek "a declaratory judgment that the Defendants' actions constitute a violation of . . . New York Education Law § 2-d." (Compl. ¶ 31.) As discussed in detail above, where an act "does not provide the legal predicate, the DJA cannot expand the statute's authority by doing so." *Chevron*, 667 F.3d at 245. New York Education Law § 2-d does not provide an individual right of action, therefore, the DJA cannot expand it by doing so. *See id.* As such, Plaintiffs' claim for a declaratory judgment under New York Education Law § 2-d is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b) for failure to state a claim is granted as to all claims. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**
Dated: Central Islip, New York
       August 22, 2018

                                         /s/
                                Denis R. Hurley
                                Unites States District Judge